CRAWFORD *et al. vs.* TRIBBLE, ordinary, for use.

1. Where an administrator held a judgment for purchase money of land sold by his intestate, he could not legally have the land levied on and sold and buy it for himself at less than its value and less than the amount of this judgment. The judgment was a part of the assets of the estate in his hands, and to so use it was a breach of his duty as administrator.

(*a.*) Where, after so purchasing the land, the administrator sold it as his own, the heirs could bring suit on his bond, and the measure of the recovery would be the value of the judgment with interest, less the sum paid out by him in order to hold the land, with interest.

(*b.*) That the administrator, after the sheriff's sale, a ain bought the property at a sale by an assignee in bankruptcy of the defendant in the judgment, to protect his title, did not alter the case. Such purchase would inure to the benefit of the estate, and the administrator could claim no more than to be allowed the amount so paid out, with interest.

(*c.*) If credit has not been given to the administrator for the sums so paid out by him, with interest, it should be done.

2. After January 1st, 1863, an administrator could not, without an

order of court, invest the funds of the estate in his hands, except in state securities.

3. The court did not err in regard to the Aderhold and Jackson & Morris claims. The first rested on disputed facts ; the second is even unintelligible without explanation.

September 19, 1882.

Administrators and Executors.    Sales.    Before Judge WELLBORN.    Habersham    Superior    Court.    February Term, 1882.

J. L. Hunter brought suit on the bond of S. W. Craw- ford, administrator of W. M. Hunter, deceased.    Defend- ant pleaded the general issue, and that he had fully ad- ministered the estate.    The case was referred to an audi- tor, to whose report both parties filed exceptions.    Four points were raised :

(1.) A note for $1000.00 for the purchase money of land was reduced to judgment, levied on the land, and the ad- administrator of the creditor became the purchaser in his individual name for $36?.00.    He afterwards sold it for $1,500.00.    The debtor having gone into bankruptcy, in order to protect his title, the administrator again pur- chased the land at the assignee's sale for $129.00.    The auditor held that the administrator was liable for the amount of the claim.

(2.) The administrator returned that he had in- vested $4,000.00 in Confederate bonds and money in 1864.    No order of court appears to have been taken for that purpose.    One ground of objection to the auditor's report was that he refused to charge the admin- istrator with the gold value of the $4,000.00 so invested after the Code went into effect.

(3.) A third assignment of error was on the subject of the claim of one Aderhold for medical services.    The administrator had given himself credit for $780.30 as paid on this account.    The vouchers showed two receipts, one for $812.50, another for $700.00.    The auditor allowed the amount claimed in the return.

(4) The administrator claimed credit for $80.00 on account of what was called the Jackson & Morris claim. As to this, the auditor made the following return: "The following item appearing in one of the copies of this return before me in this language: 'July 9, 1866. Credited by amount given in Confederate by Jackson & Morris of eighty dollars;' and in the other copy in this language: '9 July, 1866. Cr. by amount made on Confederate note given by Jackson & Morris of eighty dollars,' is not understood, and is not, therefore, included in this calculation. This reference is made that the item may be explained and the proper credit allowed."

The case was submitted to the judge without a jury. He sustained the auditor in all matters except the $4,000.00 invested in Confederate securities. As to this, he held the administrator liable for the gold value of the currency with interest. Defendant excepted.

J. B. ESTES & SON; W. T. CRANE; J. W. OWEN, for plaintiffs in error.

BARROW & ERWIN, for defendants.

JACKSON, Chief Justice.

This case came before the superior court on exceptions to an auditor's report, and an agreement of counsel that the same be tried by the judge without a jury. The suit was on an administrator's bond brought by the heir at law against the administrator and his sureties.

1. The great question made by the record is, whether the administrator can have land levied on by an execution belonging to the estate, sold by the sheriff, and be the purchaser thereof himself, *for less than its value,* the execution being issued on a judgment founded on a note belonging to the intestate, the consideration of which is purchase money for the land levied on, sold and purchased by him? This judgment is assets in his hand, and we think that the law will not permit this trustee so to deal

with assets of the estate, but that in such a case he is responsible on his bond honestly and fairly to administer the estate. It is not the case where the heirs at law may or must elect in a reasonable time to take the land after setting aside a sale by the administrator himself, which is voidable though not void; because in this case he has sold the land, and the heirs cannot go upon it. But it is the case where a trustee, having a judgment for $1,000 for purchase money of land, which was sold by his intestate, makes the sheriff levy on it and buys it himself for the sum of $368.00. He stood in the shoes of the intestate. His duty was to act just as intestate would have done, and to make the land bring the thousand dollars, or to buy it in for the estate and not for himself. That the land was worth the face of the judgment is clear *prima facie*, because it was sold by the intestate for that sum, and afterwards sold by the administrator as his own land for $1,500.00. There is no direct proof of its value when he bought it himself. If less valuable then, the onus was on him to show it. It can make no difference, that whilst he held the sheriff's title, another sale of it was made by the assignee in bankruptcy, and he protected his title by again buying it for the sum of $129.00. It would seem, therefore, that the true equity is to hold him responsible for the value of the note, with interest, less the sum he paid out in order to hold the land, with interest. The 12th *Ga.*, 594, rules, that he cannot buy land which belonged to the estate at sheriff's sale, but the sale, however fair and honest, will be set aside on application of the heir. The principle there decided rules this issue; for the judgment here is assets just as much as the land there was. This case is stronger, because there the levy was made without any connivance on his part; here he directed it made. It is true, that was a suit to set aside the sale and this is on his bond; but he could not be pursued here with a suit to set aside the sale and recover the land, for the reason that he has sold and cannot restore it. The remedy, there-

fore, is for breach of the bond, because he committed a *devastavit* and broke its condition. As to his purchase afterwards at the bankrupt sale, that was to protect the title he held then in trust for the estate, in fairness and equity, and was, though intended for his own benefit individually, a purchase for the estate. The most that he can claim is credit for that money so expended in that purchase. We conclude, therefore, that the administrator is liable for the whole amount of the Camp judgment, less the amounts he paid out, individually, at the sheriff's and the assignee's sales. As we understand the record, he has not received credit for those sums, with interest thereon, from the date of their respective payments. If he has not, the judgment must be reversed, unless such credits with interest are written off by the plaintiff; if he has received those credits, it is affirmed on this point. On the administrator's liability generally for the Camp judgment, see 3 Williams on Exrs., 1947; 3 Sugden on Vend., par., 271 (10 ed.); Hill on Trust., 537–8; 9 Paige, 238; 7 Hill, 260 1 Sand. Chan., 148–251; 13 Vesey, 601; Lewin on Tr., 464–5; 1 Cox, 134; 6 Mad. 153; 1 Yonge and C., 250; 1 Johns. Chan., 26; 2 Story's Eq. Jurisprudence, 1211; 5 Johns. Chan., 408; 2 *Ib.*, 25.

2. The administrator returned, that he had invested in Confederate bonds and money $4,000, in 1864. This was done without any order of court. After January 1st, 1863, it could not be so done except in state securities. *Venable vs. Wood*, September term, 1881; 39 *Ga.*, 594. So the court did not err on this point.

3. Error, if any was committed in respect to the Aderhold medical account, and return and vouchers, and in regard to the Jackson & Morris claim, does not appear from the record. In the first case, it was a question of fact, how much was actually paid by the administrator to Aderhold; the judge decided it, and we cannot say that from the evidence before him, he committed error in sustaining the auditor. The alleged payment to Jackson &

Morris was rejected because unintelligible to the auditor, that it might be explained ; the judge considered it also unintelligible, unless explained ; it was not explained, and we do not, without explanation, understand it either.

The result of our conclusion on the whole case is to reverse the judgment, unless the defendant in error shall write off from the judgment the principal and interest paid out by the administrator at the sheriff's and assignee's sales, for which he has not received credit ; that being done to affirm it. In either event, the costs in this court to be paid by the defendant in error.

Judgment reversed on terms.